IN THE FEDERAL DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

TOMAS DESARO
18 North Main Street
West Boylston, MA 01583

Plaintiff

v.                                                          Case #:  4:06-cv-40102

QUINSIGAMOND COMMUNITY COLLEGE
670 West Boylston Street
Worcester, MA 01606

SHEILA SYKES, in her official capacity as
Interim President
Quinsigamond Community College
670 West Boylston Street
Worcester, MA 01606

LINDA LEFAVE, in her official capacity;
Quinsigamond Community College
670 West Boylston Street
Worcester, MA 01606

MICHAEL GOGUEN, in his personal and official capacity;
Quinsigamond Community College
670 West Boylston Street
Worcester, MA 01606

Defendants

**Second Amended Complaint**

Preliminary Statement

Plaintiff, Tomas DeSaro, brings this case to compel his readmission to the Radiologic Technology Program at Quinsigamond Community College. The plaintiff is a person with a disability within the meaning of applicable provisions of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Section 504) and Title II of the Americans with Disabilities Act, 20 U.S.C. § 12131 et seq., (Title II). He has Attention Deficit/Hyperactivity Disorder and

1

associated learning disabilities, including a language-based learning disability that is exacerbated by the fact he is not a native speaker of English. His conditions substantially limit one or more life activities, specifically his ability to learn. Therefore, he is entitled to reasonable accommodations in the educational setting and to be free from discrimination based on his disabilities. He is also entitled to be free from retaliation due to his efforts to enforce his rights under Section 504 and Title II.

On Tuesday, April 11, 2006, when Plaintiff was within three weeks of graduation from the program, he was detained by his clinical instructor in the parking lot and instructed to report to the program director. The director informed him that he was being dismissed from the program because he had not passed several clinical competency examinations, all administered by the same clinical instructor. This instructor had a history of refusing to provide reasonable accommodations for his disabilities, had mocked him for taking more time than non-disabled students to perform his studies, and had made fun of him due to his accented English. Plaintiff had previously been forced to file grievances against this instructor in an attempt to stop his discrimination against him. No other clinical instructor has failed the Plaintiff in any of the required competency examinations.

I. JURISDICTION

1. The Court has subject matter jurisdiction over Plaintiff's federal law claims under 28 U.S.C. §§ 1331 and 1343. The Court has pendent jurisdiction over Plaintiff's claims under Amendment CXIV to the Massachusetts Constitution and its enacting legislation, M.G.L. c. 93 § 103.

2. The Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

3. Venue is proper in this Court under 28 U.S.C. § 1391 (b). All parties reside in Worcester County, Massachusetts.

## II. PARTIES

4. Plaintiff Tomas DeSaro is an individual with disabilities within the meaning of Section 504 and Title II. He is a person who has a physical or mental impairment that substantially limits one or more major life activities within the meaning of 34 C.F.R. § 104.3(j). Therefore, he requires and is guaranteed reasonable accommodations in the provision of his education to minimize the effects of his disabilities, to be free of discrimination based on a disability under Section 504, and to be free from retaliation for attempting to exercise his rights.

5. Defendant Quinsigamond Community College (Q.C.C.) is a public institution of post-secondary education. It is subject to the requirements of both Section 504 and Title II.

6. Defendant Sheila Sykes is the interim President of Quinsigamond Community College.

7. Defendant Linda LeFave is the director of the Radiologic Technology program at Quinsigamond Community College.

8. Defendant Michael Goguen is a clinical instructor in the Radiologic Technology program at Quinsigamond Community College.

## III. FACTUAL ALLEGATIONS

9. People with learning disabilities span the intelligence spectrum and many individuals with learning disabilities are of high intelligence. Learning

disabilities are the result of permanent neurological dysfunction or information processing disruptions that result in limited, unexpected, and usually intractable impediments in the ability to learn one or more basic skills taught through traditional formal education. Many people with learning disabilities work far harder than others in order to compensate for their disabilities.

10. There are several types of learning disabilities. Language-based learning disabilities, such as dyslexia, result from a neurological difference in processing phonemes, the basic unit of language, and can be seen in brain scans as early as infancy. The disability impairs the ability to process language. An affected individual may have difficulty reading, developing age/grade appropriate vocabulary, handwriting, spelling, taking notes, and memorizing rote and sequential facts, steps and information.

11. Attention Deficit/ Hyperactivity Disorder (AD/HD) is a medical condition often resulting in impaired executive functioning skills, such as the ability to organize and plan, pay attention to auditory and visual information, and be free from distractibility. Although arising during childhood, the condition is not limited to children. Medication can assist in managing some of the symptoms, but it is not a "cure all."

12. Mr. DeSaro has been diagnosed with both dyslexia and AD/HD. His disabilities affect his ability to maintain focus in distracting settings, attend to and recall auditory and visual information, make organization and planning of activities a challenge, and impair his memory, requiring him to spend much more time reviewing material in order to master it. His language processing disability

significantly slows the speed with which he can respond to questions, understand directions, read, comprehend, and recall texts and class materials. His dyslexia is exacerbated by the fact the required materials are all written in English.

13. Mr. DeSaro applied and was admitted to the Radiologic Technology Program at Q.C.C. in or around September, 2004.

14. The Radiologic Technology program is a 22-month course of study that enables students to become x-ray technicians upon graduation and passing the required certification examination. The program leads to an associate's degree in science. It requires a number of academic courses and four clinical rotations. In order to continue in the program, a student must pass all the radiologic technology courses and two biology courses with a grade of "C" or better, and pass all the clinical competency examinations.

15. When Mr. DeSaro began the Radiologic Technology program, the Director, Linda LeFave, told Plaintiff she had never had a student with learning disabilities in the program before.

16. Ms. LeFave further stated that it would be a shame if he wasted two years of his life if he could not pass the licensing examination.

17. To date, Mr. DeSaro has passed all the required academic courses with a grade of "C" or better. He also passed the first two clinical rotations.

18. When Mr. DeSaro began the third clinical rotation, he experienced problems with his instructor, Michael Goguen. Mr. Goguen refused to take a copy of

plaintiff's accommodation plan, stating that he would give him extra time on the final. The accommodations Plaintiff needed were not limited to this one item.

19. Shortly thereafter, Plaintiff overheard Mr. Goguen speaking on the telephone and making a comment about how an individual with ADHD did not deserve "special treatment." He also made faces and pointed at his watch during a procedure Plaintiff was conducting.

20. Mr. DeSaro met with Mr. Goguen in an informal attempt to explain the impact of his disabilities and rectify the problem.

21. In September of 2005, Mr. Goguen failed Plaintiff on a competency exam. On the retest, he again failed him, but Mr. DeSaro challenged his assessment. Mr. Goguen gave him poor marks on portions of the examination that he was not in the room to observe and refused to provide Plaintiff with a copy of his written evaluation or the contested images.

22. Plaintiff pursued a grievance regarding the alleged failure. The report of the investigation indicated that the instructor had failed to clarify his criticisms in writing, failed to provide corroboration he claimed existed, and admitted he was having personal problems.

23. During mediation regarding the grievance, Plaintiff requested reassignment to a different clinical site. It was his understanding that there were openings at two other sites. The director, Ms. LeFave, eventually told Mr. DeSaro that he could either stay at the site with Mr. Goguen or drop from the program, since transfers were not allowed for reasons of "personal preference". He chose to stay.

24. Mr. Goguen stated Plaintiff had problems with retention and organization of his examinations. Both of these problems are clear manifestations of Plaintiff's disability, and both require accommodations in the delivery of instruction, but neither preclude him from passing clinical courses or effectively performing the duties of a radiology technician.

25. Clinical competency evaluations leave significant room for subjectivity in evaluation by individual evaluators.

26. No other clinical instructor has failed Mr. DeSaro on any competency evaluations.

27. Ms. LeFave tried to get Mr. DeSaro to waive his accommodation of taking written tests at the Disability Center, but the Disability Center successfully intervened on his behalf.

28. Mr. DeSaro attempted to salvage his relationship with Mr. Goguen, but became discouraged in this endeavor upon receipt of an evaluation claiming Plaintiff had "stopped trying"- a blatantly subjective assertion that could not have been farther from the truth. Plaintiff avoided taking competency examinations under Mr. Goguen due to fears that he would not evaluate his work fairly.

29. Plaintiff pursued a formal grievance through the disability services office of Q.C.C.

30. At a meeting on December 20, 2005 held to discuss the grievance, Mr. DeSaro requested various accommodations for the clinical setting addressing both the teaching and evaluation of clinical skills. These requests included:

    a.) additional time for learning skills;

    b.) being permitted to refer to books or notes during the learning phase, to ask for clarification of instruction and repeat of instructions as needed, and direct instruction in organizing the tasks, without grade penalties. He also requested that Mr. Goguen clearly explain any concerns about Plaintiff's performance so that Plaintiff had an opportunity to understand and correct the problem;

    c.) during the verbal portion of competency examinations, extra time if needed to respond to questions, and attempts to reduce interruptions and distractions.

31. The college agreed to attempt to provide Mr. DeSaro with extra time to focus on tasks and perform skills during practice, if feasible, to try to provide a less distracting setting during practice, if feasible, to permit additional simulations and practice time with fellow students if feasible, and to try to provide extra clinical time on holidays and spring break. Plaintiff was not permitted extra clinical time on weekends. He was not allowed extended time to complete the course or program. In reality, plaintiff did not have significant extra learning time.

32. Plaintiff passed the third clinical rotation. The spring semester and final rotation began on a calmer note. However, in mid to late February 2006, Mr. Goguen again began to make broad, non-specific complaints about Mr. DeSaro's work. During the oral part of competency examinations, he again fired questions at him at a rapid pace, not permitting Plaintiff time to concentrate, retrieve the proper words or organize his thoughts, or move to a quieter, less distracting setting.

33. As a result of defendants' failure and refusal to reasonably accommodate Plaintiff's disabilities in order to enable him learn and to pass his competency evaluations, Plaintiff was ultimately told he was being terminated from the program on April 11, 2006.

34. Without needed accommodations, Plaintiff is subjected to discrimination and retaliation on the basis of his disabilities.

35. Without immediate relief from the Court, Plaintiff will be irreparably harmed in that he will be denied any opportunity to graduate from the program and seek employment and professional opportunities.

IV. FIRST CLAIM FOR RELIEF (Violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C § 794)

36. Plaintiff incorporates by reference all the allegations in paragraphs 1 through 32, above.

37. Plaintiffs is a qualified individual with disabilities within the meaning of the Rehabilitation Act of 1973. Defendant Quinsigamond Community College is a public college that receives federal funds, sufficient to invoke the coverage of

9

the Rehabilitation Act of 1973. Defendant Sykes is responsible for the overall operation of the college. Defendant LeFave is responsible for the Radiologic Technology program. Defendant Goguen is responsible for clinical instruction.

38. Under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), Plaintiffs has an implicit right to bring a civil action in the District Court of the United States to seek redress for the violation of rights protected under Section 504. This statute provides the authority under which Plaintiff now petitions this Court for declaratory and injunctive relief and damages for the violations of Section 504 alleged herein.

39. By the acts and omissions alleged herein, taken under color of law, Defendants have excluded Plaintiff from participation in and denied the benefits of full and equal access to its programs, and denied Plaintiff the right to be free from discrimination against handicapped persons in the administration of its programs guaranteed under Section 504, and the regulations promulgated there under, 34 C.F.R. § 104 , et seq.

40. As a direct and proximate result of Defendants' violations of Section 504, Plaintiff will suffer irreparable harm and damages, including being unable to graduate from the program and seek employment.

41. Wherefore, Plaintiff requests relief as set forth below.

V. SECOND CLAIM FOR RELIEF (For retaliation in violation of Section 504)

42. Plaintiff realleges and incorporates by reference as though fully set forth herein, paragraphs 1- 38 inclusive, of this Complaint.

43. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits covered programs and individuals from retaliating against an individual because he has filed a complaint or advocated for his rights.

44. As a result of Plaintiff's attempts to advocate for reasonable accommodations in the provision of his education, Plaintiff has incurred the animosity of members of the clinical teaching staff, in retaliation for his actions, in violation of Section 504.

45. As a direct and proximate result of Defendants' violation of Plaintiff's right to be free from retaliation, Plaintiff will suffer irreparable harm and damages, including being unable to graduate from the program and seek employment.

46. Wherefore, Plaintiff requests relief as set forth below.

VI. THIRD CLAIM FOR RELIEF (Violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 et seq.)

47. Plaintiff realleges and incorporates by reference as though fully set forth herein paragraphs 1 through 43 above.

48. Plaintiff is a qualified individual with disabilities within the meaning of the Americans with Disabilities Act of 1990. Defendant Quinsigamond Community College is the recipient of federal funds sufficient to invoke the coverage of the Act.

49. Under 42 U.S.C. §12133, Plaintiffs has an explicit right to bring a civil action in the district court of the United States to seek redress for the violation of rights protected under the Americans with Disabilities Act, 42 U.S.C. §12131 et seq. Together and separately, these statutes provide the authority under which Plaintiff now petitions this Court for declaratory and injunctive relief for the violations of the Americans with Disabilities Act alleged herein.

50. Defendants, acting under color of law, by discriminatory treatment of Plaintiff, have violated his rights under the Americans with Disabilities Act, 42 U.S.C. § 12131, and the regulations promulgated thereunder, 28 C.F.R § 35, et seq.

51. As a direct and proximate result of Defendants' violations of the American with Disabilities Act, Plaintiff has or will suffer irreparable harm and damages, including being unable to graduate from the program and seek employment.

52. Wherefore, Plaintiff requests relief as set forth below.

VII. FOURTH CLAIM FOR RELIEF (Violation of Amendment CXIV of the Massachusetts Constitution)

53. Plaintiff realleges and incorporates by reference as though fully set forth herein paragraphs 1 through 49 above.

54. Plaintiff is a qualified individual with disabilities within the meaning of Amendment CXIV to the Massachusetts Constitution, as enacted by M.G.L. c. 93, § 103.

55. Defendants, by their discriminatory treatment of Plaintiff, have violated his rights under the Massachusetts Constitution.

12

56. As a direct and proximate result of Defendants' violations of Amendment CXIV of the Massachusetts Constitution, Plaintiff has or will suffer irreparable harm and damages, including being unable to graduate from the program and seek employment.

57. Wherefore, Plaintiff seeks relief as set forth below.

RELIEF REQUESTED

WHEREFORE, Plaintiffs pray for relief as follows:

1. The issuance of a declaratory judgment that Defendants have violated the Americans with Disabilities Act, the Rehabilitation Act of 1973, and Amendment CXIV to the Massachusetts Constitution.

2. The issuance of a temporary restraining order and preliminary and permanent injunction ordering Defendants to immediately reinstate Plaintiff to the Radiologic Technology program, to permit Plaintiff to complete his competency examinations with clinical instructors other than Michael Goguen, and to extend the time within which Plaintiff must complete the clinical competency examinations.

3. Compensatory damages under Plaintiff's federal law claims and compensatory and exemplary damages under Plaintiff's state law claims for intentional discrimination and retaliation.

4. An award of reasonable attorneys' fees and costs.

5. Such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiff hereby requests a trial by jury.

Respectfully submitted,

__/s/ Carol J. King_____
Carol J. King
BBO# 600853
Wallace Law Office, P.C.
One Post Office Square
Sharon, MA 02067
(781) 793-0575

## VERIFICATION

I, Tomas DeSaro, solemnly swear, declare and affirm under penalties of perjury and the laws of the United States of America that the contents of the foregoing Complaint are true to the best of my knowledge, information, and belief.

___/s/ Tomas DeSaro_
Tomas DeSaro