UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS (WORCESTER)
CASE: 4:06-CV-40102-FDS

_____
                                        )
**TOMAS DESARO,**                       )
                                        )
            **Plaintiff,**              )
                                        )
**v.**                                  )
                                        )
**QUINSIGAMOND COMMUNITY COLLEGE;**     )
**SHEILA SYKES, IN HER OFFICIAL**       )
**CAPACITY AS INTERIM PRESIDENT**       )
**QUINSIGAMOND COMMUNITY COLLEGE;**     )
**LINDA LEFAVE, IN HER**                )
**OFFICIAL CAPACITY; MICHAEL GOGUEN,**  )
**IN HIS PERSONAL AND OFFICIAL**        )
**CAPACITY,**                           )
                                        )
            **Defendants.**             )
_____)

## MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS, QUINSIGAMOND COMMUNITY COLLEGE, SHEILA SYKES AND LINDA LEFAVE FOR SUMMARY JUDGMENT

This Rehabilitation Act case arises from the plaintiff, Tomas DeSaro's ("Mr. DeSaro")

dismissal from the Radiologic Technology Program ('the Program") at Quinsigamond

Community College ("the College") in 2006 because Mr. DeSaro failed to meet the College's

academic standards in spite of accommodation for Mr. DeSaro's alleged handicap of Attention

Deficit Hyperactivity Disorder ("AD/HD"). The College, Sheila Sykes ("Ms. Sykes") and Linda

LeFave ("Ms.LeFave) (together "the College defendants") move for summary judgment on all

claims in Mr. DeSaro's Second Amended Complaint pursuant to Fe.R.Civ.P.56(c), on the

grounds that there is no genuine issue as to any material fact and the College defendants are

entitled to judgment as a matter of law. Mr. DeSaro cannot prove that he is otherwise qualified

for participation in the Program; that the College failed to offer him a reasonable

accommodation; or that he was dismissed from the Program solely because of his alleged

disability. Further, the defendants Ms. Sykes and Ms. LeFave seek judgment in their favor

because Mr. DeSaro has neither alleged nor proved any wrongdoing by them which is

compensable under any of the statutes under which Mr. DeSaro seeks relief.

## I.  NATURE AND STATUS OF PROCEEDINGS.

Mr. DeSaro claims that his dismissal from the Program violated Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. sec. 701 *et seq.*(Counts I & II); Title II of The Americans

With Disabilities Act, 42 U.S.C sec.1231 *et seq* (Count III); and G.L.c.. 93, §103 (Count IV).

The named individual defendants are Ms. Sykes, in her official capacity as then-Interim

President of the College; Ms. LeFave, the Program Coordinator, in her official capacity; and

Michael Goguen ("Mr. Goguen"), a Clinical Instructor employed by Milford-Whitinsville

Regional Hospital, in his personal and official capacities. Mr. DeSaro seeks compensatory and

exemplary damages, attorney's fees, declaratory relief, and injunctive relief, namely immediate

readmission, and modifications, to the Program.

## II.  FACTS.

A.     Radiologic Technologists.

Mr. DeSaro was enrolled in the Program in order to become a certified Radiologic

Technologist. Radiologic Technologists use x-ray equipment to detect foreign matter, bone

fractures, or pathological disease processes. Statement of Material Facts ("Facts"), ¶5 and

Affidavit of Linda LeFave, ("LeFave Aff."), ¶5. Radiologic Technologists work in hospitals,

2

clinics, medical offices and other health care settings, and must be skilled in using x-ray equipment, proper positioning of patients for medical x-ray detection, processing and evaluating x-rays for technical quality, and protecting themselves and others from unnecessary exposure to radiation. Facts, ¶5 and LeFave Aff., ¶5. Radiologic Technologists serve a crucial function in patient care in that Radiologists (physicians) cannot interpret x-ray films accurately if the patient's position is incorrect or the films are not technically adequate for interpretation. Facts, ¶5 and LeFave Aff., ¶5.

      B.    <u>The Radiologic Technology Program.</u>

When Mr. DeSaro enrolled in the Program he, like all other students, was provided a Program Policy Handbook ("Handbook"), which describes the Program's goals and academic requirements. Facts, ¶6 and LeFave Aff., ¶6. The twenty-two month Program is designed to "educate individuals, who upon completion of the Program, will be able to demonstrate entry-level clinical skills and academic knowledge essential to the professional practice of Radiologic Technology." Facts, ¶6 and LeFave Aff., ¶6; and Ex. A, Handbook, p.7, ¶1. The Program is accredited by the Joint Review Committee on Education in Radiologic Technology (JRC/ERT), which is the only agency recognized by the United States Department of Education to accredit educational programs in radiography and radiation therapy. Facts, ¶7 and LeFave Aff., ¶7. The College must maintain compliance with the JRC/ERT accreditation standards, the Standards for an Accredited Educational Program in Radiologic Technology. Facts, ¶7 and  LeFave Aff., ¶7; and Ex. A, Handbook, p.29, ¶12.2. These Standards include a requirement that the Program follow a JRC/ERT recognized and accepted curriculum that prepares the student to practice in the profession. Facts, ¶8; LeFave Aff. ¶8; and Ex. B, JRC/ERT Standards For An Accredited Educational Program In Radiological Sciences, effective January 1, 2002 ("JRC/ERT

Standards"). The curriculum recognized and accepted by JRC/ERT is a competency-based curriculum that requires each student to attain a specified level of proficiency in radiologic technology. Facts, ¶8; LeFave Aff., ¶8; Ex. B, JRC/ERT Standards, p.14. Linda LeFave, as the Program Director, is responsible to ensure that the Program maintains compliance with JRCERT Standards. Facts, ¶8 and LeFave Aff.¶8.

After successful completion of the Program, students are eligible to apply for the National Certification Examination of the American Registry of Radiologic Technologists (ARRT) and licensure through the Massachusetts Department of Public Health, Radiation Control Program. Facts, ¶9 and LeFave Aff., ¶9.  Credentialing by the ARRT certifies the graduate as a Registered Technologist in Radiography -- R.T.(R), a credential that is nationally recognized. Facts, ¶9 LeFave Aff. ¶9. A student must be licensed by the Massachusetts DPH in order to be employed as a Radiologic Technologist in Massachusetts. Facts, ¶9; LeFave Aff. ¶9; and Ex. A, Handbook, p.8.  See also G.L.c. 111, sec 5L ("no person shall perform the duties of a radiologic technologist without [a] license.").

 Most importantly in light of the issues raised in this Motion, students who graduate from an accredited program like the College's, and are eligible to take the ARRT exam but have not yet taken it, are issued a one-year temporary license to practice in Massachusetts. Facts, ¶10; 105 CMR 125.006(D); and LeFave Aff., ¶10.  Ms. LeFave, as the Program Director, is responsible for certifying that an individual student has successfully completed the Program and meets the ARRT license eligibility requirements, thereby qualifying the student to get a temporary license and work as a Radiologic Technologist in Massachusetts. Facts, ¶10; LeFave Aff., ¶10; and Ex.A, Handbook, p.8.

In compliance with the JRC/ERT standards requiring a competency-based curriculum, a

major emphasis of the Program is clinical education. While enrolled in the Program students rotate through two (2) different Clinical Education Settings, which have been established at several Worcester area hospitals, including the clinical setting at issue in this case, Milford Regional Medical Center. Facts, ¶11 and LeFave Aff., ¶11. A Clinical Education Setting is a facility recognized by the JRC/ERT as meeting appropriate qualifications for delivering clinical education and evaluation of clinical competency. Facts, ¶11 and LeFave Aff. ¶11; Ex. B, JRC/ERT Standards, p.12. To qualify as a JRC/ERT recognized Clinical Education Setting, the site must have a minimum of one Clinical Instructor for each site. Facts, ¶12; LeFave Aff. ¶12; and Ex. B, JRC/ERT Standards, p.12. The JRC/ERT Standards require that Clinical Instructors understand the clinical objectives and clinical evaluation system, provide students with clinical instruction and supervision, and evaluate the students' clinical competence. Facts, ¶12; LeFave Aff. ¶12; and Ex.B, JRC/ERT Standards, p.7. Michael Goguen was the Clinical Instructor for the Milford Regional Medical Center, and holds an ARRT certification. Facts, ¶12 and LeFave Aff. ¶12.

The periods of clinical assignment in the Program are Clinical Education Setting (I), September through June of the first year, and Clinical Education Setting (II), August through May of the second year. Facts, ¶13; LeFave Aff., ¶13; and Ex. A, Handbook, p.9. The Program faculty and Board of Education Coordinators assign students to a particular Clinical Education Setting based upon the student's clinical experience to date, the number of allowable students per Clinical Education Setting delineated in the JRC/ERT Standards, the requirement that no student remain in the same Clinical Education Setting for both rotations, and the relative size of the available Clinical Education Settings. Facts, ¶13; LeFave Aff., ¶13; and Ex. A, Handbook, p.27.

5

A student's clinical competence is tested by performing a radiological examination in a certain examination category, *e.g.* lumbar spine, and undergoing evaluation by the Clinical Instructor or Clinical Staff. Facts, ¶14 and LeFave Aff., ¶14. In order to meet the outcome objectives of the Program and AART eligibility requirements, each student in the Program is required to demonstrate competency in a certain number of mandatory and elective examination categories. Facts, ¶14; LeFave Aff., ¶14; and Ex. A, Handbook, p.29, ¶12.2. Through these Clinical Competency Evaluations a student must repeatedly demonstrate, by performing radiographic procedures in the "live" setting, that he has mastered "appropriate patient care, radiographic procedural skills, radiation protection, professionalism, and image evaluation." Facts, ¶14; LeFave Aff., ¶14; and Ex. A, p.29, ¶12.2. A Clinical Competency Evaluation is done only after the student has sufficient opportunity to practice the examination category and tells the evaluator he or she is prepared to be evaluated in that category. Facts, ¶15; LeFave Aff., ¶15. The Clinical Instructor or Clinical Staff person who performs the Clinical Competency Evaluations uses an evaluation form that is consistent with JRC/ERT Standards and reflects the criteria for successful evaluations outlined in the Handbook. Facts, ¶15 and LeFave Aff. ¶15; Ex. A, Handbook, pp. 19-23, "Criteria For Competency Evaluations". If a student fails a total of five (5) Clinical Competency Evaluations, this "shall result in dismissal from the program." Facts, ¶15; LeFave Aff. ¶15; and Ex. A, Handbook, p.30, ¶12.8. Failure of any radiologic technology core course is also grounds for dismissal.  Facts, ¶15; LeFave Aff. ¶15; and Ex. A, Handbook, p.33, ¶16.1.

        C.      <u>Mr. DeSaro's Performance In The Program.</u>

When Mr. DeSaro enrolled in the Program, he requested and was granted certain accommodations because of his disability, Attention Deficit/Hyperactivity Disorder. Facts, ¶17

and LeFave Aff. ¶17. These accommodations included preferential seating, beverages permitted in class, tape recording of lectures, a classroom note taker, extended time for written examinations (double time), and written examinations administered in a less distracting setting. Facts, ¶16 and LeFave Aff., ¶16. When Mr. DeSaro began to experience difficulty in his clinical rotations, he requested and was granted additional accommodations, including "extra time to focus on tasks and perform skills during practice, if feasible, to try to provide a less distracting setting during practice, if feasible, to permit additional simulations and practice with fellow students if feasible, and to try to provide extra clinical time on holidays and spring break." Second Amended Complaint, p.8, ¶¶30-31; Facts ¶18; and LeFave Aff., ¶18. Mr. DeSaro also requested additional clinical time on weekends. Facts, ¶19 and LeFave Aff., ¶19. The Program considered the request for additional weekend time but ultimately determined that it was not reasonable because it would substantially alter the program and cause undue hardship on the Program and its clinical instructors. Facts, ¶19 and LeFave Aff., ¶19. There was insufficient staff available at the Milford Regional Medical Center to supervise Mr. DeSaro on the weekends as required by JRC/ERT Standards. Facts, ¶19 and LeFave Aff., ¶19.The College relies upon the clinical site, the Milford Regional Medical Center, to make its staff and hospitals available for students to perform clinical work. Facts, ¶19 and LeFave Aff., ¶19.

After Mr. DeSaro began experiencing academic difficulties in his clinical rotations, including failures in Clinical Competency Evaluations, Ms. LeFave and other Program faculty met with Mr.DeSaro on several occasions for counseling and academic advising in compliance with the Program policies. Facts, ¶20 and LeFave Aff., ¶20; Ex. A, Handbook, pp. 32-33. As a final attempt to remedy the situation and in accordance with JRC/ERT Standards he was placed on clinical probation in March of 2006. Facts, ¶20 and LeFave Aff., ¶20; Ex. A, Handbook, pp.

32-33. Mr. DeSaro ultimately failed five (5) Clinical Competency Evaluations in unrelated examination categories and was dismissed from the Program on April 11, 2006, in accordance with Program policies. Facts, ¶20 and LeFave Aff., ¶20; Ex. C, April 11, 2006. Student Counseling Report. Mr. DeSaro also failed his Medical Radiography Clinic IV course, which in and of itself is grounds for dismissal from the Program. Facts, ¶20 and LeFave Aff., ¶20.

Mr. DeSaro requested readmission to the Program. The College's Readmissions Committee allowed him to re-enroll in the Program if he met certain Readmission Criteria established by the Readmission Committee, including passing two additional examinations to demonstrate retention of his clinical skills. Facts, ¶21 and LeFave Aff., ¶21. Mr. DeSaro took both examinations in June of 2006 but failed them. Facts, ¶22 and  LeFave Aff., ¶22.

In Ms. LeFave's opinion, Mr. DeSaro's repeated failure to perform adequately on the Clinical Competency Evaluations indicates that he has not developed, maintained, or demonstrated the clinical skills and knowledge required to competently practice as a Radiologic Technologist, as required to meet ARRT license requirements. Facts, ¶23 and LeFave Aff., ¶23.

## III.  ARGUMENT.

A.  <u>The College Defendants Are Entitled To Summary Judgment Because There Is No Genuine Issue of Material Fact And The College Defendants Are Entitled To Judgment As A Matter of Law.</u>

Summary judgment if appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party establishes that there is no genuine issue of material fact, the nonmovant must produce evidence to show a trialworthy dispute exists. <u>Rathburn v. Autozone, Inc.</u>, 361 F.3d 62, 66 (1st Cir. 2004). A fact is "material" if it has the "potential to affect the outcome of the suit under applicable law." <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52 (1st Cir. 2000). A "genuine" issue is one supported by such evidence that "a 'reasonable jury, drawing favorable inferences,' could resolve it in favor of the nonmoving party." <u>Triangle Trading Co., Inc. v. Robroy Indus., Inc.</u>, 200 F.3d 1, 2 (1st Cir. 1999) (*quoting* <u>Smith v. F.W. Morse & Co.</u>, 76 F.3d 413, 428 (1st Cir. 1996)). "[C]onclusory allegations, improbable inferences, and unsupported speculation," are insufficient to establish a genuine dispute of fact. <u>Valez-Rivera v. Agosto-Alicea</u>, 437 F.3d 145, 154 (1st Cir. 2006).

The College defendants are entitled to summary judgment on all claims of Mr. DeSaro's Second Amended Complaint because the summary judgment establishes that Mr. DeSaro cannot meet his burden to prove that he is otherwise qualified for the Radiologic Technology Program at the College, or that he was dismissed from the Program solely because of his alleged disability. *See* <u>Calero-Cerezo v. United States Department of Justice</u>, 355 F.3d 6, 20 (1st Cir. 2004).

9

B.    Mr. DeSaro Cannot Establish A Violation Of The Rehabilitation Act Because He Has Failed To Demonstrate That He Is "Otherwise Qualified" For The Program.

Section 504 of the Rehabilitation Act provides in relevant part:

No otherwise qualified individual with a disability in the United States…shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive Agency.

29 U.S.C. §794(a).

To make a prima facie case under either the Rehabilitation Act or the ADA (**1**), Mr. DeSaro must establish that: (1) he is disabled under the Act; (2) he is "otherwise qualified" to remain a student in the Program, *i.e.,* he can meet the essential eligibility requirements of the Program, with or without reasonable accommodation; (3) he was dismissed solely because of his disability; and (4) the program is receiving Federal financial assistance. Zukle v. Regents of University of CA, 166 F.3d 1041, 1045 (9th Cir. 1999). *See also* Calero-Cerezo v. United States Department of Justice, 355 F.3d 6, 20 (1st Cir. 2004). The record establishes that Mr. DeSaro cannot meet his burden to prove to prove that he is able to meet all of the Radiologic Technology Program's necessary requirements in spite of his handicap. Southeastern Community College v. Davis, 442 U.S. 397, 406-07, 99 S.Ct. 2361, 2367-68 (1979). Because Mr. DeSaro has failed to prove that he has met all of the necessary academic requirements of the Program in spite of his disability, Mr. DeSaro's dismissal from the Program for failure to meet the Program's academic standards does not violate the Rehabilitation Act.

---

1 The same standards apply to both the Rehabilitation Act and the ADA. Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 20 (1st Cir. 2004).

      1.      The Successful Completion of the Program's Academic Requirements Is
              A Necessary Program Requirement That Mr. DeSaro Did Not Meet
              Despite Being Provided Reasonable Accommodations.

The College has the initial burden to demonstrate that successful completion of the Program's academic requirements is a necessary requirement of the Program. Ward v. Massachusetts Health Research Institute, 209 F.3d 29, 35 (1st Cir. 2000) (in employment context, employer has the burden to prove essential job function). The burden then shifts to Mr. DeSaro to prove that he can satisfy that requirement despite his disability. Mulloy v. Acushnet, 460 F.3d 141 (1st Cir. 2006) (employee has the burden of establishing that he could perform his job with the requested accommodation); *see also* Southeastern Community College v. Davis, 442 U.S. 397, 406-07, 99 S.Ct. 2361, 2367-68 (1979) (plaintiff must show that he is able to meet all of a program's necessary requirements in spite of his handicap).

      a.      The ability to meet the Program's academic standards is a
              necessary requirement of the Program.

The College defendants have established that a student's compliance with the Program's academic standards is a necessary requirement of the Program. The goal of the Program is to train students to practice as qualified Radiologic Technologists. LeFave Aff., ¶6. The best way to determine whether a student is qualified to practice as a Radiologic Technologist is to test the student's clinical skills. LeFave Aff., ¶14. The best way to test a student's clinical skills is to require the student to repeatedly perform procedures in a "live" setting under the observation of certified clinical instructors. LeFave Aff., ¶14. Moreover, the Program must have a competency-based curriculum to maintain its accreditation with JRC/ERT and adequately prepare students for practice of their profession. LeFave Aff., ¶8. As the court in Zukle v. Regents of University of

<u>CA,</u> 166 F.3d 1041, 1050 (9th Cir. 1999) recognized, a clinical clerkship is designed to simulate the practice of medicine and, as such, the in-hospital portion of the clerkship is a vital part of medical education. The College has clearly shown that a student's ability to demonstrate continued clinical competence through "live" examinations with patients is a necessary requirement of the Program. This is particularly so in light of the fact that successful completion of the Program and the Director's certification of ARRT examination eligibility essentially give a student the Massachusetts license he needs to practice Radiologic Technology in Massachusetts. LeFave Aff., ¶¶9-10. Radiologic Technologists serve a vital role in ensuring that Radiologists (physicians) have technically adequate films for interpretation, and the College must have confidence that a student has adequate clinical skills before he or she graduates from the Program. LeFave Aff., ¶5.

    The College's decision that Mr. DeSaro did not meet the academic requirements of the Program is entitled to some level of deference. *See* <u>Regents of University of Michigan v. Ewing,</u> 474 U.S. 214, 225 (1985) ("When judges are asked to review the substance of a genuinely academic decision,...they should show great respect for the faculty's professional judgment"). "University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." <u>Board of Curators, Univ. of Mo. v. Horowitz,</u> 435 U.S. 78, 96, n.6, 98 S.Ct. 948, 954-56, 55 L. Ed.2d 124 (1978) (Powell, J., concurring). *See also* <u>Wynne v. Tufts Univ.,</u> 932 F.2d 19, 25 (1st Cir. 1991)(en banc) (*quoting* <u>Ewing</u>, 474 U.S. at 225) ("When judges are asked to review the substance of a genuinely academic decision, …they should show great respect for the faculty's professional judgment.") While "academic freedom does not embrace the freedom to discriminate," the First Circuit has observed that [w]e are a society that cherishes academic

freedom and recognizes that universities deserve great leeway in their operations." Cohen v.

Brown Univ., 101 F.3d 155, 185 (1st Cir. 1996)(citations omitted).

This deference to academic decisions is especially appropriate in the context of health-

care degree programs like the College's. "This is the case especially regarding degree

requirements in the health care field when the conferral of a degree places the school's

imprimatur upon the student as qualified to pursue his chosen profession." Doherty v. Southern

College of Optometry, 862 F.2d 570, 576-77 (6th Cir. 1988) (*quoting* Olsson v. Board of Higher

Educ., 49 N.Y.2d 408, 413, 402 N.E.2d 1150, 1153, 426 N.Y.S.2d 248, 251 (1980)). Evaluation

in a clinical course "is no less an 'academic' judgment because it involves observation of

…skills and techniques in actual conditions of practice, rather than assigning a grade to

…written answers on an essay question." Horowitz, 435 U.S. at 95, 98 S.Ct. at 958 (Powell,

concurring)(footnote omitted).

        b.     <u>Mr. DeSaro cannot prove that he can successfully complete the Program's academic requirements despite his disability.</u>

Once the College proves that successful completion of the Programs academic

requirements is a necessary requirement of the Program, the burden shifts to Mr. DeSaro to

prove that he can meet this requirement in spite of his handicap. Southeastern Community

College v. Davis, 442 U.S. 397, 406-07, 99 S.Ct. 2361, 2367-68 (1979).

The record reveals no evidence that Mr. DeSaro is able to successfully complete the

Program's academic requirements despite his handicap. In fact, Mr. DeSaro's repeated failure to

meet the Program's academic standards, despite the reasonable accommodations provided by the

College, indicates that he is not able to develop, maintain, or use the clinical skills and

knowledge required to competently practice Radiologic Technology. Facts, ¶23 and LeFave Aff.,

¶23. Mr. DeSaro failed several clinical competency examinations, failed his Medical Radiography Clinic IV course, and failed the examinations required for readmission to the Program. Facts, ¶20-23 and LeFave Aff., ¶20-23. Mr. DeSaro has clearly failed to prove that he can perform the essential requirements of the Program without jeopardizing patient care. *See* EEOC v. Amego, 110 F. 3d 135, 144 (1st Cir. 1997) (in a Title I ADA case, if essential job functions necessarily implicate the safety of others, plaintiff must demonstrate that he can perform these functions in a way that does not endanger others.); *see also* Davis, 442 U.S.397, 409, 99 S.Ct. 2361, 2368, 60 L.Ed.2d 980 (1979)(in implementing the mandate of Section 504 the courts must ensure the safety of third parties).

The successful completion of the Program's academic requirements and the maintenance of clinical skills are necessary requirements of the Program, and Mr. DeSaro has no reasonable expectation of proving that he can meet those requirements despite his handicap. On these grounds, the College defendants are entitled to summary judgment. *See* Carleton v. Commonwealth, 447 Mass. 791,810-811(2006)(in G.L.c. 151B case, summary judgment properly granted where plaintiff could not prove he was a qualified handicapped person); *see also* Zukle v. Regents of University of CA, 166 F.3d 1041, 1051 (9th Cir. 1999)(no violation of Rehabilitation Act where requested accommodation would not have aided student in meeting the medical school's academic standards).

C.     DeSaro Has Not Proven That The College Failed To Offer Him A Reasonable
       Accommodation.

In order to prove a violation of the Rehabilitation Act, Mr. DeSaro must also establish

that the College failed to offer him a reasonable accommodation. Calero-Cerezo v. United States

Department of Justice, 355 F.3d 6, 23 (1st Cir. 2004).  However, the College is not required to

grant all accommodations which Mr. DeSaro requested; only reasonable accommodations are

required under the Act. It has long been held that "Section 504 imposes no requirement upon an

educational institution to lower or to effect substantial modifications of standards to

accommodate a handicapped person." Southeastern Community College v. Davis, 442 U.S. 397,

409, 99 S.Ct. 2361, 2368-69, 60 L. Ed. 2d 980 (1979). "When the requested accommodation

involves an academic decision, 'courts should show great respect for the faculty's professional

judgment'" regarding whether the accommodation is reasonable. Amir v. St. Louis University,

184 F.3d 1017, 1028 (8th Cir. 1999), quoting Regents of University of Michigan v. Ewing, 474

U.S. 214, 225 , 106 S.Ct. 507 (1985). The College will prevail on Mr. DeSaro's claim if it

demonstrates that it considered Mr. DeSaro's "accommodation requests but determined as a

matter of professional, academic judgment that such requests were not reasonable because they

would lower the academic standards or substantially alter the degree program." Toledo v.

Sanchez, 454 F.3d 24, 26 (1st Cir. 2006) (citing Darian v. Univ. of Mass. Boston, 980 F.Supp.

77, 88-89 (D. Mass. 1997).

In his Second Amended Complaint, Mr. DeSaro concedes that the College granted all of

but two of his requested accommodations, extra clinical time on weekends and extra time to

15

complete the Program requirements:

> The college agreed to attempt to provide Mr. DeSaro with extra time to focus on tasks and perform skills during practice, if feasible, to try to provide a less distracting setting during practice, if feasible, to permit additional simulations and practice with fellow students if feasible, and to try to provide extra clinical time on holidays and spring break. Plaintiff was not permitted extra clinical time on weekends. He was not allowed extended time to complete the course or program.

Second Amended Complaint, ¶31.  As the LeFave Affidavit demonstrates, the Program considered

the request for extra clinical time on weekends, and extended time to complete the Program

requirements, but determined that these requests were not reasonable because they would

substantially alter the Program requirements. Facts ¶19 and LeFave Aff. ¶19. The College relies

upon the clinical site, Milford Regional Medical Center, to make its staff and facility available for

students to perform clinical work. Facts ¶19 and LeFave Aff., ¶19. The clinic site must maintain a

certain student/staff ratio in order to be recognized by JRC/ERT as a Clinical Education Setting.

Facts ¶19 and LeFave Aff., ¶19. To force the Program and its Clinical Education Setting to provide

Mr. DeSaro extra clinical time on weekends when insufficient staff was available to supervise him

would threaten public safety and be a fundamental change in the Program, which the Rehabilitation

Act does not require. *See* Alexander v. Choate, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985)

(an institution cannot be required to make "substantial" or "fundamental" changes to its programs

and any accommodations must be reasonable.); *see also* Mulloy v. Acushnet, 460F.3d 141 (1st Cir.

2006)(employee's request to work remotely from satellite office was not an accommodation but a

redefinition of his job and was therefore per se unreasonable). Neither must the College grant Mr.

DeSaro additional time to complete the Program requirements where the Program is designed to be

completed in two years with an eye towards immediate licensure by the Commonwealth and testing

for national licensure. Facts ¶6-10 and LeFave Aff., ¶6-10. *See also* Zukle v. Regents of University

of California, 166 F.3d 1041 (9th Cir. 1999)(medical student's requested accommodation of rearranging clerkship schedule would constitute a substantial alteration of school's curriculum and was not required). The College's decision not to grant these requests for extra clinical time on weekends and extra time to complete the Program requirements was thus not a violation of the Rehabilitation Act.

In his Second Amended Complaint Mr. DeSaro seeks not only reinstatement to the Program but also reassignment to another clinical instructor and "extra time" to complete his exams. Second Amended Complaint, p.13, ¶2. It is clearly established that the Rehabilitation Act does not require the College to reassign Mr. DeSaro to another instructor if that request is not disability related. See Amir, 184 F.3d at 1029 (where student requested reassignment to another clinical instructor because he feared retaliation and not because of his disability, the reassignment was not a reasonable accommodation under the ADA). Mr. DeSaro offers no evidence that his disability necessitates that a clinical instructor other than Mr.Goguen evaluate him.

In addition, to allow Mr. DeSaro "extra time" within which to complete his clinical exams would be a fundamental alteration in the Program and would lower the Program's academic standards. One of the skills that the Clinical Competency Evaluations is designed to measure is a student's ability to process information quickly and accurately in a setting that mirrors the actual conditions faced in practice as a Radiologic Technologist. Facts ¶15-16 and LeFave Aff., ¶¶15-16. To eliminate or alter this requirement for Mr. DeSaro would substantially change one of the essential requirements of the Program. Facts ¶16 and LeFave Aff., ¶16. In addition, as a practicing Radiologic Technologist, Mr. DeSaro cannot be expected to be given "extra time" when called upon to perform radiological imaging examinations in emergency situations. See Ellis v. Morehouse School of Medicine, 925 F. Supp. 1529, 1548-49 (N.D.Ga.1996)(allowing fourth year surgery students extra

17

time to respond to questions and prepare diagnoses would not mirror actual medical practice and would fundamentally alter the nature of the program). In these circumstances, where the goal of the Program is to train qualified Radiologic Technologists, it is unreasonable to require the College to test a student's clinical skills in an environment which is does not mirror the reality of the position in which he will be practicing. *See* <u>Wynne v. Tufts Univ. Sch. Of Med.,</u> 976 F.2d 791, 794-95 (1st Cir. 1992) (*Wynne II*) (medical school was not required to change its testing methods for a learning disabled student where such a change would substantially alter the program or lower academic standards); <u>Zukle v. Regents of California,</u> 166 F.3d 1041, 1050 (9th Cir. 1999) (deferring to the medical school's academic decision that the in-hospital portion of a clerkship is a vital part of medical education and that allowing a student to be excused from this requirement would sacrifice the integrity of the program).

Neither was the College's refusal to transfer Mr. DeSaro to another clinic site unreasonable. As the Affidavit of Ms. LeFave establishes, the College assigns students to clinic sites based upon their prior clinical experience and the available slots at each site, among other factors. Facts ¶13 and LeFave Aff., ¶13. Since transfer to another clinical site was not feasible, the College's refusal to grant Mr. Desaro's transfer request does not violate the Rehabilitation Act. *See* <u>Darian v. University of Massachusetts,</u> 980 F.Supp.77, 90-91 (D.Mass.1997)(nursing student's request to transfer to another clinical site was not a reasonable accommodation since none of the other sites were feasible.)

Moreover, in the circumstances of this Program, Mr. Desaro's request for a transfer to another clinic site was in effect a request for a different clinical instructor, since each site has one clinical instructor. Facts ¶13 and LeFave Aff., ¶13. The Rehabilitation Act does not require the College to grant a request for assignment to a different teacher. *See* <u>Amir v. St</u>. <u>Louis University,</u>

184 F.3d 1017 (8th Cir. 1999) (medical school's refusal to agree to a student's request not to be assigned to a particular teacher was not discriminatory).

The summary judgment record indicates that the College granted all of the reasonable accommodations that Mr. DeSaro requested. See Facts ¶17-19 and LeFave Aff. ¶¶17-19. Because the College's refusal to arrange for Mr. DeSaro to have extra clinical time on weekends, transfer Mr. DeSaro to another clinical site, or allow him extra time to complete the Program requirements, is not a violation of the Act, the College is entitled to summary judgment.

D.  Mr. DeSaro Cannot Establish That He Was Dismissed From The Program Solely Because of His Handicap

Mr. DeSaro has the initial burden to show that he was dismissed from the Program solely by reason of his handicap. Taub v. Frank, 957 F.2d 8, 10 (1st Cir. 1992)(plaintiff must make the prima facie showing that he was otherwise qualified under the Act and that the adverse action was taken solely because of his handicap). The summary judgment record clearly establishes that Mr. DeSaro was dismissed from the Program because of failure to meet the Program's academic standards and not because of his handicap. Such a dismissal does not violate the Rehabilitation Act. See Taub v. Frank, 957 F. 2d 8, 11 (1st Cir. 1992) (no violation of Act where postal worker was not discharged from employment because of his drug addiction but rather for possessing heroin for distribution); see also Leary v. Dalton, 58 F.3d 748, 752 (1st Cir. 1995) (where employer discharged plaintiff because of absenteeism resulting from incarceration for driving under the influence, the plaintiff's alcoholism was not the sole reason for his termination); Griel v. Franklin Medical Center, 234 F.3d 731, 733 (1st Cir. 2000)(no violation of Rehabilitation Act where nurse's termination was based upon genuine concern about nurse's violations of drug-dispensing protocol, and not her status as a recovering drug addict).

Moreover, Mr. DeSaro cannot satisfy his burden by arguing that his poor academic performance was caused by his handicap and therefore he necessarily was dismissed from the Program because of his handicap. This reasoning was rejected by the court in EEOC v. Amego, 110 F. 3d 135, 149-150 (1st Cir. 1997) when it declined to hold that an "adverse employment action taken because of conduct related to a disability is tantamount to action taken because of a disability itself." Id. at 137 (employee who was terminated for misuse of prescription medications failed to prove that termination was based solely upon her handicap, depression, and not on her conduct).

In light of Mr. Desaro's repeatedly poor academic performance in the Program, no rational jury could conclude that Mr. DeSaro was dismissed from the Program solely because of his handicap and summary judgment is properly granted for the College defendants. *See* Lesley v. Chie, 250 F.3d 47, 58 (1st Cir. 2001)(summary judgment appropriate where plaintiff could not establish she was denied services solely by reason of her disability).

     E.     <u>The Public Interest Would Not Be Served By Allowing Mr. DeSaro's Requested Relief.</u>

In considering whether to order the College to readmit Mr. DeSaro to the Program, the Court must consider whether the public interest is well-served by such an order. Bercovitch v. Baldwin School Inc., 133 F.3d 141, 149 (1st Cir. 1998). The LeFave Affidavit establishes that Mr. DeSaro repeatedly failed to meet the academic standards of a Program designed to train Radiologic Technologists to practice their profession in a safe manner. To require the College to readmit Mr. DeSaro to the Program when he has demonstrated an inability to develop and maintain his clinical skills despite all of the reasonable accommodations the College gave him, would certainly not promote the public interest in quality patient care. Facts ¶23 and LeFave Aff.

20

¶23.

F.      Mr. DeSaro Cannot Prove a Violation of the Massachusetts Equal Rights Act
        Because He Cannot Prove He Is Otherwise Qualified For Participation In The
        Program.

In Count IV of his Second Amended Complaint Mr. DeSaro states a claim pursuant to

G.L.c. 93, § 103, for violation of Article 114, which provides that "[n]o otherwise qualified

handicapped individual shall, solely by reason of his handicap, be excluded from participation in,

denied the benefits of, or be subject to discrimination under any program or activity within the

Commonwealth." Violations of Article 114 may be redressed through a claim under G.L.c. 93,

§103. Shedlock v. Department of Corrections, 442 Mass. 844, 852, n.6 (2004) ("Actions to

enforce rights guaranteed by art. 114…are authorized by G.L.c. 93, §103.") "The constitutional

right [in art. 114] is broader than the rights afforded in G.L.c. 151B in the sense that it applies to

other contexts …not covered by [G.L.c. 151B]." Carleton v. Commonwealth, 447 Mass. 791,

812-813, n. 37 (2006).  However, Massachusetts courts have construed the term  "otherwise

qualified handicapped individual" as being consistent with the "otherwise qualified" requirement

in the Rehabilitation Act and G.L.c. 151B. See Carleton, 447 Mass. 791, 811-813

(2006)(concluding that there is no significant distinction between the language of the

Rehabilitation Act, the term 'qualified handicapped person' in G.L.c. 151B, and the term

'otherwise qualified handicapped individual' in art. 114). Because the proof requirements for the

Rehabilitation Act and art. 114 are the same, Mr. DeSaro's inability to prove he is otherwise

qualified for participation in the College's Program pursuant to the Rehabilitation Act dooms his

art. 144 claim. See Carleton, 447 Mass. at 812-813 ("We do not construe [plaintiff's] art. 144

right to be free from employment discrimination based on handicap more broadly than that

which is provided him in [G.L.c. 151B].") Because Mr.Desaro cannot prove he is a qualified

handicapped person under the Rehabilitation Act, his constitutional claim must also fail.

       G.            <u>Mr. DeSaro Can Prove No Claim Against Ms. LeFave or Ms. Sykes.</u>

     Although Mr. DeSaro names both Ms. LeFave and Ms. Sykes in their official capacities,

he makes no allegations against Ms. Sykes other then to describe her capacity. Second Amended

Complaint, ¶6. In addition, Mr. DeSaro states no allegations against Ms. LeFave other than her

alleged unsuccessful attempt to get Mr. DeSaro to waive one of his accommodations. Second

Amended Complaint, ¶27. Nothing in the Second Amended Complaint rises to the level of a

Rehabilitation Act claim. Moreover, Mr. DeSaro makes no allegation that either Ms. LeFave or

Ms. Sykes had the ability to make decisions regarding the acceptance or acceptance of federal

funds, which is necessary to establish individual liability under the Rehabilitation Act. <u>Lee v.</u>

<u>Trustees of Dartmouth College</u>, 958 F. Supp. 37, 45 (D. N.H. 1997). Without such evidence,

defendants Ms. LeFave and Ms. Sykes are entitled to summary judgment in their favor.

22

## IV. CONCLUSION

For the reasons stated, the College defendants request that their Motion for Summary judgment be allowed on all counts of plaintiffs' Second Amended Complaint.

Respectfully submitted,

COMMONWEALTH OF MASSACHUSETTS
Quinsigamond Community College, Sheila Sykes and
Linda LeFave
By their attorney
MARTHA COAKLEY
ATTORNEY GENERAL


  /s/*Margaret J. Hurley*
Margaret J. Hurley, BBO # 559534
Assistant Attorney General
Government Bureau/Trial Division
One Exchange Place, 3rd Floor
Worcester, MA 01608
(508) 792-7600 ext. 108
margaret.hurley@ago.state.ma.us


## Certificate of Service

I, Margaret J. Hurley, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 21, 2007.

*/s/ Margaret J. Hurley*
Margaret J. Hurley

23